Benio, J.
(Dissenting.)—It is conceded, that the defendants were incorporated under the general act of 1849, as a mutual insurance company; and that the contract of insurance, upon which a recovery is claimed, was executed for the cash consideration of $9.81 only, and without any engagement on the part of the assured to be further liable, upon any event or contingency whatever; and that the amount insured was the sum of $872. The insured was not in any event to have any interest in the money thus paid by him, nor in any premiums paid by any other parties effecting insurance with the company. The contract was an undertaking by the defendants, in consideration of the money thus paid, to indemnify him against loss by fire, and nothing more.
The defendants were authorized to make contracts of insurance “ on the plan of mutual insurance.” (Act of 1849, c. 308, §§ 4, 5;) And in addition to the power,? necessary to transact that business, including such as might be incidental to it, they did not possess and could not exercise any other powers. (2 R. S. 600, § 3.)
The general act carefully distinguishes between what it denominates the plan of mutual insurance, and the business of insurance generally. It authorizes the formation of two classes of insurance corporations, founded wholly upon that distinction, requiring from those which are not upon the plan of mutual “insurance a capital actually paid, to the amount of at least $50,000, which is to be invested in public stocks, and bonds and mortgages, while those which are organized upon the mutual plan are not obliged to furnish any actual capital, but may commence business, when they have received *76 applications for insurance to a certain amount, and have, taken notes for the unearned premiums in advance. (§§ 5, 8, 11.) The act denominates the corporations of the former class stock companies, and the others mutual companies. (§ 11.)
Upon these positions there can be no controversy whatever ; and the single question in this case is, whether the contract upon which this action is brought was entered into between the defendants and the insured party, in transacting a business of mutual insurance. If it was, the contract is lawful; otherwise,-it is illegal and void.
What, then, is the meaning- of mutual insurance, and how does it differ from the business of insurance, when carried on by joint-stock companies or individual underwriters? The words import the existence of reciprocal relations among the persons engaged in the business, and that each acts in return or in correspondence with the others. Where they are applied to the business of insurance, they import that the parties concerned are each insured parties, and that, at t-lie .same time, each are insurers of the others. We should gather this idea from the language, if there were no known examples of such a practice, to which we might suppose that the legislature had reference. But every business man, whether.lawyer or layman, immediately associates with the words a method of conducting the business of insurance, "well known in this country, and to a less extent, among most of the civilized and commercial nations of the world. By looking into the books, we find, that a mutual insurance company is an association of persons each of whom is desirous of insuring his property, and who agree with each other to contribute their premiums to a common fund, on the terms that each shall be entitled, in case of loss, to . an indemnity out of that fund. (Angell on Life and Fire Insurance, § 413; Arnould on Insurance, 85; Strong v. Harvey, 3 Bing. *304.) It is, of course, the same thin-, if, in lieu of a fund, the parties to the mu *77 tuai enterprise give written guarantees to be responsible for losses, in the proportion to their interest as insured parties, in the form of premium notes. All that is material to the idea of mutual insurance is, that each of the parties should sustain the relation of an insured party, and of an insurer of each of the others. Now, the business of insurance, where the mutual principle does not obtain, is quite a different thing. When conducted by a joint-stock company, or by a corporation, which is now the most usual method, it consists in the contribution of a capital, the -proprietors of which guaranty the full payment of insurance to the policy-holders, but retain the entire profits of the business. The assured has no interest in the premiums; they become'the property of the insurers, as the price of the insurance, and they are at liberty to apply them in what manner they think proper. Enough has been said, to show that-the two classes of institutions cannot be confounded, without an entire disregard of the plain directions of the statute. The distinction between them is palpable and it is fundamental. One who insures in a stock company pays a definite premium, as a consideration for the risk Avhich the company undertakes to indemnify him against, and he has no interest in the result of any other risk which the company may assume; he is simply an insured party, and not an insurer; it is indifferent to him, whether the company accumulates profits, or loses a part of its capital, provided it does not become insolvent, and thus unable to perform its engagements; whereas, one who insures in a mutual company is a shareholder in whatever the company may possess, and may be a loser to the amount of his interest in the common fund, or of his premium note, if the provision for indemnity consists in such notes; he is personally, to that extent, the insurer of all other .parties who hold policies; and such policy-holders are, to the same extent, the insurers in his policy. Now, these defendants having organized under this law as a mutual company, *78 besides their proper business as a mutual company, have deliberately entered upon the general business of insuranee, as ^though, in addition to their powers as a mutual company, they Avere organized as a stock company. The mutual branch of their business, as it appears from their by-laws, Avas organized upon the system of premium notes to be assessed for the payment of losses, and they have issued between three and four thousand policies, based upon such notes; and they have besides issued some five thousand policies like the one held by the plaintiff, to outside parties, Avho have no interest in or connection Avith the mutual enterprise, and Avho are not obliged to contribute anything toAvards the indemnity of each other, or of-any of the parties‘holding policies issued upon the mutual branch of the business, to parties Avho have given premium notes. The result Avill be, if this action can be sustained, that the premium notes may be enforced for the payment of losses to parties Avho are strangers to the mutual enterprise, and Avho can never be made to contribute anything to the indemnity of those who have given these notes, if they should sustain losses from the risks Avhich they are insured against. It is no answer to this víoav, to say, that the makers of the notes have had the benefit of the premiums paid by the outside parties. In the first place, there is no such fact stated in the case; but if it Avere true, it could only operate as an equitable estoppel against the parties Avho had knowingly received the illegally-acquired premiums, and Avould have no tendency to sustain an action on the poliejq Avhich must assume it to be a legal contract.
Nor is it any ansiver to the objections against this course of business, that the charter contains a clause permitting it to be done. The associates, it seems, are empowered to frame their oaaui charter, subject to the approval of the attorney-general (§§ 10,11); and that officer, in this case, overlooking the provisions referred to, certified that the charter conformed to the statutes of the *79 state. The provision of the act requiring the approval of the attorney-general did not enable him to license one of these companies to violate the law, and if an illegal provision is found lurking in a charter approved by him, it is not the less illegal, because it escaped his scrutiny. The legislature, by requiring his examination and certificate, sought to *guard against the public inconvenience which would arise from the existence of a corporation apparently authorized to pursue a course forbidden or not authorized by law; but it did not authorize that officer to dispense with or modify any of the provisions of the statute.
There was submitted to us, in the course of the argument of the counsel for the plaintiff, a reference to the several special charters which have been granted by the legislature, from the earliest period down to the present time, and an abstract of the principal provisions of several of them. The argument deduced from them was, that the legislature had, in some of them, recognised a course of business similar to that pursued by the defendants in this case, as falling within the description of mutual insurance. In some of them, the method of working out the feature of mutuality is not prescribed, as in the case of the earliest one, the Washington Mutual Assurance Company, chartered in 1802 (Laws, 152). There was no joint stock to be contributed, but each assured party was to be a member of the company; there could be no policy, therefore, to outside parties; each party holding a policy would be an insurer and an assured. In the Schoharie Mutual, chartered in 1831 (Laws, 280), the idea of mutuality was obtained by a provision in the ninth section, by which the parties insured were obliged to indemnify the directors, in proportion to the amounts respectively insured by them in the company. It seems to have been assumed, that the directors would have to pay the losses, and that the contribution of the adventurers would be enforced under that section. These two instances *80 present the most imperfect of the schemes for effectuating the mutual feature; and rvitliout going through the list, it is sufficient to say, that I find nothing in any of them, giving any countenance'to the suggestion that an insurance could be made by a mutual company, not also specially authorized by law to do a general insurance business, in favor of a person who was not at the same time responsible in some way as an insurer of the others.
There is a class of cases, where the company ivas originally incorporated as a mutual insurance company, and was afterwards '“'authorized, by a special statute, to transact a general business like a stock company. The Mutual Insurance Company of the City and County of Albany is a sufficient type of that kind of legislation. It was incorporated in 1836 (Laws, 315), upon the pattern of the Madison County Company, the plan of mutuality being arranged by means of premium notes; it was amended by an act of the legislature in 1848 (Laws, 66). A person applying for insurance ivas authorized to pay the company “ a certain definite sum of money, in lull for such insurance, which said sum (it ivas declared) shall be in lieu and place of a premium note;” and it ivas further declared, that such person should not be liable, during the continuance of his policy, for any sum beyond the amount thus originally paid. By another section, the money thus received ivas made liable for losses and expenses, and was to be first expended for these purposes, before any resort could be had to the premium notes. Several other mutual companies were amended in a similar manner. The power of the legislature, by a prospective enactment, to enlarge the powers of a mutual insurance company, so'as to permit it to transact a business in which there should be no feature of mutuality, cannot be doubted. This is precisely what ivas done in this case. It is perfectly plain, that the parties taking-policies under this amendment, did not assume any mutual relations with each other, or with those who had *81 taken out policies, upon giving premium notes; they assumed the position of insured parties, and did not become in any sense insurers. As they were authorized to take policies in a mutual company, and were not to assume mutual relations, it was carefully provided, as was fit and proper, that they should incur no liability as the insurers of the others, and, in effect, that they should have no interest in the mutual business of the company. This, was done by the provision that the sum to be paid by such parties should be “in full for such insurance,” and that they should not be liable, in any event, to pay any further sum. It is altogether probable, that the companies obtaining these additional powers were able to show to the legislature that they had accumulated a capital in the course of their ^mutual business which rendored it safe for them and for the public to engage in a general insurance business, as though they had contributed a capital stock. So far from proving that the business thus authorised is, or was considered by the legislature to be, a species of mutual insurance, the legislation referred to presents the contrary view in a very strong light. The discrimination between the original-members, bound together and made responsible for each other’s losses, by means of the system of premium notes, and the new parties authorized to come in upon precisely the same kind of contract which exists between insurance companies, not mutual, and their customers (and whose cases are carefully placed without the influence of the mutual principle) marks the difference between the two species of transactions, as sharply as any argument which could be presented. The similarity of language, amounting almost, to identity, between the provisions in the defendants’ charter and the act amending the Albany charter, shows that it was intended by the persons who framed' the first named instrument, to do by their own authority what it required the whole legislative power of the state-to accomplish in the other case.
*82 I have never entertained the opinion, that'the system of premium notes was an essential feature of mutual insurance. I refer to it as only one of several methods by which mutual relations may be created among parties embarking in that business. In White v. Haight (10 N. Y. 310), I expressed the opinion, founded upon an examination ■of most of the charters of mutual companies which had been granted by the legislature, that the principle of mutuality had theretofore been worked out by two methods only—by means of premium notes operating as mutual ■guarantees by each of the adventurers in favor of all the ■others, and by a provision for an annual accounting, by which each insured party was secured a share of the profits in proportion to the premiums paid by him. A further -examination of the charters, aided by the list and abstracts which have been furnished, has confirmed me in this opinion; for, independently of the cases in which the power to transact a general insurance business has been engrafted upon mutual charters, as in 'x"tlie amend-ments to the Albany charter, which are quite aside from the subject, and in the few early charters where the method of establishing mutual relations was not pointed ■out, the two modes referred to seem to be the only ones which have received the sanction of the legislature. But I am far from thinking that the companies organized ■under the general act are confined to aiiy particular system. The act leaves.the associates perfectly free to or-organize such method of establishing mutual relations as they may see fit; only they cannot, under the pretense of ■carrying on mutual insurance, make contracts for insurance into which the mutual principle does not enter at all. The premiums may be required to be paid in cash, as in the companies chartered in the city of New York, with a provision for dividing the profits in proportion to the premiums paid; or, only sufficient may be exacted from the insured to pay the expenses, leaving the losses to bo made up by assessments upon the guarantee notes; and it may *83 bo, that a combination of the two methods might be adopted, which would secure the same general result. If applicants were permitted to execute a guarantee, or pay an amount of money, at their election, with a provision that the money should be invested by the company for their benefit, and be repaid to them, with its accumulations, so far as it should not be required to pay the proportion of losses and expenses, which those who have paid ought to contribute, the arrangement would not seem to me objectionable. Under the provisions in the defendants’ charter, the insured parties must give notes or pay money; but then those who paid money paid it “ in full for the insurance,” _ and assumed no responsibility as to the other risks, while those who gave notes were liable to be assessed to their full amount, for the payment of all losses which should be sustained by the other insured parties. I am unable to discover any mutuality between these two classes of dealers, and am quite sure none can be pointed out.
It has been argued, that a kind of mutualitj'- may exist between two classes of insured parties, where the individuals of one class undertake, by- means of premium notes, to be ^"responsible in certain proportions for the losses which any of the others may sustain, and those of the other class pay money in full for their respective insurance. The argument is, that a sum of money, to be paid down, may be determined upon, which shall be equivalent to an undertaking to indemnify against a particular kind of casualty, and that it is to be intended, in favor of the policy of insurance in this case, that the insured were brought within the principle of mutuality by means of the adjustment of the premiums upon this theory. In the first place, there is nothing in the charter or by-laws of the company, both of which are before us, which indicates the existence of any such theory, or Avhich tends to show that the persons who, under this charter, should pay money in full of their insurance Avould *84 be required to pay any other or different amount than that usually exacted from insured parties upon the same risks in other companies. Prima facie, the payment of a given sum in full for a particular hazard, will be taken to be the established price of such a risk, and any person who sets up, in a particular case, that the amount was arrived at by the application of other principles, must show it. In the next place, it appears affirmatively in this case, that no such theory was adopted. By the 5th section of the by-laws, the proportion is stated between the premium notes, which were liable to be assessed for their full amount, and the cash premiums; by which appears that the cash premiums were one-tenth, and one-twentieth of the amount of the notes, there being two classes of notes, called the small ones and the large ones. We cannot intend that any mutuality was designed between two persons, one of whom pays $1 in full, and the other executes an engagement to be responsible for casualties to an amount not exceeding $20.
But under the provision in question in this charter, any person applying for insurance may pay a definite sum of money in full for the insurance. ' If any person may do it, all the persons who wish to be insured may; and thus we have an insurance company in which the insured parties have no relation with each other, but each one has paid in full for his risk *to the corporation, and the corporation has undertaken to indemnify him, and there is no other contract in the case. This is. precisely the course of business of stock companies, and if a mutual company may thus transact its business, there is no difference between them. The position is, that a sum certain, contributed by one man, may be so adjusted as to be substantially equivalent to the guarantee of another against the casualties of fire. That is true, in a certain sense, and it is the principle upon which the. rates of premium are ordinarily arrived at! The companies fix upon such rates of pre *85 minm as that upon the calculation of the chances of an extensive business, running through a course of years, they will receive an aggregate amount of money sufficient to pay all the losses, the expenses of the office, and a certain profit upon the funds employed. This is precisely what the argument supposes may take place between a mutual company, representing the makers of the premium notes on the one hand, and the parties who obtain policies upon the payment of a fixed sum in cash, on the other, except that no addition is made to the rate for interest on capital; none being required. There is, no doubt, a sort of mutuality between parties thus dealing; if the terms are fairly adjusted, the pajunent of money and the engagement of indemnity, are just equivalent to each other. It is the same kind of mutuality which obtains between buyer and seller, in contracts of sale ; between employer and employed, in contracts for services; and borrower and lender, and the like; but such parties are not mutual vendors, mutual employers and mutual lenders. So, in the business of insurance, the man who pays a fixed sum, to be insured, and does not assume any hazard for any other person, may be considered as engaged in a matter in some sense mutual, but he is not a mutual insurer, for he is not an insurer at all. So, of the assured in this case; if he is a party to a business of mutual insurance, he must have insured his associates, as • a consideration for being insured himself; to be a mutual insurer, he must in the first place be an insurer. An insurer is a person who undertakes to indemnify another against certain risks ; they may happen, or they may not; *and the essence of the contract is the assumption of the hazard. If he assumes no hazard—if, when he has paid his money, he is under no further liability—he cannot be, in any conceivable sense, an insurer; and if not an insurer at all, he cannot be a mutual insurer; and unless, by his policy, he becomes a mutual insurer, it *86 cannot be said, that the contract was made in the course of carrjdng on the business of mutual insurance.
The 21st section of this act has been sometimes relied on to sustain policies like the one under consideration. It would be enough to say, that no such capital as the section refers to has been furnished to the defendants, and that, therefore, the provision has no application to them. But the section has not, I think, any bearing upon the question in any case. It is, in substance, an authority to the mutual companies to borrow money, and to allow the lender not only an interest on the amount, but a participation in the profits of the business besides. As the money is to be liable, like capital stock, to the payment of the company’s debts, it was but reasonable that the lenders should be permitted to contract for an advantage proportionate to the risk of losing the principal. It resembles somewhat lending upon bottomry or respondentia; but I do not perceive that it bears at all upon the question, whether a mutual company can make a policy for a sum certain, where the insured does not take the obligations of an insurer upon himself.
I think the judgment of the Supreme Court was right, and that it ought to be affirmed.